.STATE OF MINNESOTA *vs.* H. J. FLEISCHER.

June 17, 1889.

**Constitution — Regulation of Practice of Medicine — Conditions of Granting License.**—That part of section 3 of an act of the legislature entitled "An act to regulate the practice of medicine in the state of Minnesota, and to license physicians and surgeons, and to punish persons violating the provisions of this act," (now chapter 9, Laws 1887,) which provides that the license therein contemplated shall only be granted "by the consent of not less than seven (7) members" of the board of examiners. does not confer upon said board the right or power to absolutely disregard the learning and qualifications of an applicant; or to unreasonably or arbitrarily reject his claims; or, at will, grant or refuse its certificate or license. Therefore the act is not, for that reason, unconstitutional and void.

Appeal by defendant from a judgment of the municipal court of St. Paul.

*C. D. & Thos. D. O'Brien,* for appellant.

*Moses E. Clapp,* Attorney General, *J. J. Egan,* and *Fayette Marsh,* for the State.

COLLINS, J. The defendant stands convicted of the offence of practising medicine in this state without first obtaining license, as prescribed by the terms of chapter 9, Laws 1887. On appeal he alleges the unconstitutionality of the entire chapter, because section 3, after specifying the various branches in which the applicant must be ex-

amined by the board, which consists of nine members, and the number of courses of lectures he must have attended, provides that "after examination said board shall grant a license to such applicant to practise medicine and surgery in the state of Minnesota, which said license can only be granted by the consent of not less than seven members of said board," etc. The appellant's position is that by means of the language quoted, and especially by the use of the noun "consent," the legislature intended to and did clothe the board of examiners with the right and power to absolutely disregard the learning and qualifications of the applicant, to unreasonably and arbitrarily reject his claims, and, at will, grant or refuse the contemplated certificate. No such construction should be given the statute unless the design is unmistakably manifest, and we do not think it is. From the spirit and object of the act, plainly seen in its several sections, it is obvious that the law-makers intended to establish a high standard of qualification and fitness for the medical profession, whereby the people might be protected from ignorance and quackery. In creating the board, before which all persons desiring to practise medicine must appear for an investigation as to skill and ability, it was within the legislative discretion to require that all, or more or less than a majority, of its members should participate in the examination, and, before issuing a certificate, affirmatively pass upon the merits of each applicant. The requirement that at least seven of the nine members must concur and approve, is a slight innovation upon the majority rule found in subdivision 3, § 1, c. 4, Gen. St. 1878, which would prevail in the absence of another. It is a mere declaration of the mode in which a determination must be reached.

Judgment affirmed.